COURT OF APPEALS OF VIRGINIA


Present: Judges Clements, Agee* and Felton
Argued at Richmond, Virginia


DAMON LYNN BANKS
                                              OPINION BY
v.    Record No. 1883-01-2        JUDGE JEAN HARRISON CLEMENTS
                                           SEPTEMBER 30, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                   James F. D'Alton, Jr., Judge

          Joseph A. Sadighian, Senior Assistant Public
          Defender (Office of the Public Defender, on
          brief), for appellant.

          Amy L. Marshall, Assistant Attorney General
          (Jerry W. Kilgore, Attorney General, on
          brief), for appellee.


     Damon Lynn Banks was convicted in a jury trial of

involuntary manslaughter, in violation of Code § 18.2-36.  On

appeal, he contends the trial court erred in finding the evidence

sufficient to sustain his conviction.  We disagree and affirm the

conviction.

                         I.  BACKGROUND

     Under familiar principles of appellate review, we view the

evidence and all reasonable inferences fairly deducible from

that evidence in the light most favorable to the Commonwealth,

_____

     * Justice Agee participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

the party that prevailed below.  See Dowden v. Commonwealth, 260 Va. 459, 461, 536 S.E.2d 437, 438 (2000).

So viewed, the evidence established that, in the early morning hours of September 10, 2000, Banks and four other Marines, Terrance Jenkins, Francisco Ortez, Khaliah Freeman, and Tory Benjamin, left the Coppermine Club in Petersburg, Virginia. At they walked down Washington Street in the direction of the Howard Johnson Hotel, the victim, Keith Aldrich, came up behind them.  The Marines stopped so that some of them could urinate, and Aldrich walked past them.  The Marines began to talk and joke with Aldrich.  Aldrich joked back.  Benjamin threw a twenty-ounce plastic coke bottle at Aldrich, who thereafter began walking in the middle of the street.  Cars coming down the street honked and flashed their lights at him.

As the Marines approached the intersection with Interstate 95 (I-95), Aldrich asked them if they were in the Army.  They told Aldrich they were in the Marines, and Aldrich responded that he too was in the Marines.  Believing Aldrich was lying, Banks stood in front of Aldrich and began to question him about Marine Corps values and the chain of command.  Aldrich tried to get around Banks, but Banks got in front of him again.  When Aldrich put his hands up, Ortez tackled him and hit him in the face.  Aldrich then stumbled and started running down the I-95 off-ramp towards the interstate.  Banks ran after Aldrich.

- 2 -

Benjamin and Freeman followed Banks, and Ortez and Jenkins remained at the top of the ramp.

Benjamin ran part way down the ramp after Banks. There, he observed Banks standing over Aldrich, who was "all balled up" on the ground in the middle of the road in a fetal position. Benjamin then saw Banks hit Aldrich in the face. At that point, Benjamin saw headlights approaching up the ramp and observed Banks "running to the side of the road." Benjamin started going back up the ramp and then heard a "boom, boom." Turning around, he saw Aldrich had been hit by a car. Benjamin returned to the other Marines and told them that Aldrich had been hit by a car. Rejoined by Banks, the group then ran to the Howard Johnson Hotel. None of them contacted the police or called for an ambulance.

At the hotel, Banks admitted to Ortez that he had knocked Aldrich down after chasing him. He also admitted to Benjamin that he had hit Aldrich, saying Aldrich deserved it for lying about being in the Marines.

The car that struck Aldrich was driven by Nina Ann Campbell. Campbell testified she was exiting off I-95, going thirty miles an hour, when all of a sudden she saw something "all balled up" in the middle of the off-ramp two feet in front of her. There were no streetlights illuminating the roadway. Observing "it was pitch black" at the time and that she "didn't expect to see anything in the middle of the road," Campbell

- 3 -

stated it was too late for her to stop by the time she saw the object in the road, despite her last-second efforts to avoid it. Immediately after hitting Aldrich, Campbell stopped her car, determined that she had run over a body lying on the ramp, and found a nearby policeman.

Dr. William G. Gormley, the medical examiner who performed Aldrich's autopsy, testified that Aldrich, who was found dead at the scene of the accident, sustained severe crushing injuries to his chest and thoracic area and had several abrasions on the side of his body, which Dr. Gormley described as "road burn." Dr. Gormley concluded that the cause of death was "multiple blunt-force injuries to the chest" consistent with being run over by a car. Dr. Gormley could not give an opinion, based on the autopsy, to confirm whether Aldrich had been assaulted prior to being run over. He did opine, however, that the injuries were consistent with Aldrich being struck by the car while in a reclining position, rather than standing up. On cross-examination, Dr. Gormley testified Aldrich had a blood alcohol content of .12%. The legal limit for lawfully driving a motor vehicle was .08%. Based on this legal limit for intoxication, a general average indicator to correlate the effect of alcohol on judgment, Dr. Gormley said Aldrich's consumption of alcohol was "likely to have had an effect [on his] judgment."

Testifying in his own defense, Banks admitted he got "upset" and "angry" when Aldrich stated he was in the Marines. He further admitted that, when chasing Aldrich, he tried to trip him but missed and fell himself. He got up and continued the chase down the ramp. Catching up to Aldrich, Banks "grabbed him and he fell" in the roadway. Banks then hit Aldrich in the face. Leaving Aldrich lying "in the middle of the road," Banks started back up the ramp. He then heard the car strike Aldrich, but did nothing to help the victim and did not call the police.

## II. ANALYSIS

Banks contends the evidence was insufficient, as a matter of law, to convict him of involuntary manslaughter. The Commonwealth, he argues, failed to prove beyond a reasonable doubt that his conduct amounted to criminal negligence or that it was the proximate cause of Aldrich's death.

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444, (1987). "In doing so, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We are further mindful that

the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999). We will not disturb the conviction unless it is plainly wrong or unsupported by the evidence. Sutphin v. Commonwealth, 1 Va. App. 241, 243, 337 S.E.2d 897, 898 (1985).

## A. Criminal Negligence

Banks argues that his conduct only rises to the level of gross negligence and, thus, even in the light most favorable to the Commonwealth, fails to demonstrate negligence so wanton and culpable as to show a callous disregard for human life. We disagree.

Involuntary manslaughter is defined "as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act." Gooden v. Commonwealth, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984). To convict Banks of involuntary manslaughter, the Commonwealth had to prove beyond a reasonable doubt that Banks committed

> acts of commission or omission of a wanton or willful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable results of his acts.

- 6 -

Bell v. Commonwealth, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938). Criminal negligence "must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life." Id. at 611, 195 S.E. at 681. We judge criminal negligence by an objective standard. It occurs when "the offender either knew or should have known the probable results of his acts." Conrad v. Commonwealth, 31 Va. App. 113, 121-22, 521 S.E.2d 321, 325-26 (1999) (en banc).

Here, it is undisputed that, upset and angry at Aldrich for claiming to be a Marine, Banks chased Aldrich down an off-ramp of I-95 and, after catching him and knocking him to the ground, hit Aldrich in the face while he was lying in the road. Banks then ran from the scene leaving Aldrich lying "all balled up" in a fetal position in the middle of the unlit exit ramp in the dark. Moreover, Benjamin testified that he saw headlights approaching up the ramp as Banks stood over Aldrich and then observed Banks "running to the side of the road."

We conclude that assaulting Aldrich and leaving him lying apparently injured on the unlit exit ramp in the dark, with a vehicle approaching, was conduct so wanton and willful that it showed utter disregard for the safety of human life. Furthermore, a reasonable person would have known that these circumstances would likely lead to Aldrich's injury or death.

Accordingly, the evidence proved that Banks's acts of commission and omission rose to the level of criminal negligence.

### B. Proximate Cause

To convict Banks of involuntary manslaughter, the Commonwealth also had to prove beyond a reasonable doubt that Banks's "criminally negligent acts were a proximate cause of the victim's death." Gallimore v. Commonwealth, 246 Va. 441, 446, 436 S.E.2d 421, 424 (1993).

Banks asserts that, notwithstanding his role in the confrontation with Aldrich, the actual causes of Aldrich's death were Ortez's hitting Aldrich, which "sent him running down the expressway ramp," the negligent driving of Campbell, and Aldrich's own voluntary intoxication. Each of those acts, he maintains, was an independent, intervening cause of the victim's death. Accordingly, he concludes, the Commonwealth failed to prove that his conduct was the proximate cause of Aldrich's death. Again, we disagree.

Banks's argument disregards the applicable principles of proximate cause. As the Supreme Court stated in Gallimore,

> [t]here can be more than one proximate cause and liability attaches to each person whose negligent act results in the victim's injury or death. To be an intervening cause . . ., the [act in question] must have been an event which [the accused] could not have foreseen. "An intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury."

Id. at 447, 436 S.E.2d at 425 (citation omitted) (quoting

- 8 -

Delawder v. Commonwealth, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973)).

It is clear from the evidence in this case that Banks's "negligent acts and omissions exposed [Aldrich] to the subsequent . . . act that ultimately resulted in his death." Id. Indeed, but for Banks's assault on Aldrich, the decedent would not have been lying helpless in the middle of the exit ramp of I-95 at night. Banks himself admitted that, after catching Aldrich, knocking him down, and hitting him in the face while he was on the ground, he left him lying in the middle of the exit ramp.

It is also clear that Ortez hit Aldrich before Banks chased Aldrich down the ramp, assaulted him, and left him lying in the middle of the exit ramp. Thus, Ortez's hitting Aldrich had no bearing on the "'chain of causal connection between [Banks's] original act[s] of negligence and [Aldrich's] subsequent [death].'" Id. (emphasis added) (quoting Delawder, 214 Va. at 58, 196 S.E.2d at 915). Hence, Ortez's hitting Aldrich does not constitute an independent, intervening cause.

For Campbell's conduct to constitute an independent, intervening cause, as Banks suggests, Campbell's driving on the exit ramp must have been an event that Banks could not have foreseen. It was readily foreseeable, however, that vehicles travelling on I-95 would use the off-ramp to exit the interstate and that a driver so exiting may not be able to see a "balled up" body in the roadway because it was dark and the road was not

- 9 -

lit.

Therefore, irrespective of whether Ortez's hitting Aldrich or Campbell's driving was criminally negligent or not, the evidence proved that Banks's conduct was a proximate cause of Aldrich's death. He is, thus, criminally liable.

Finally, we find no merit in Banks's argument that Aldrich was to blame for his own death because he ran down a highway exit ramp in an intoxicated condition. The evidence did indicate that Aldrich had a blood alcohol level of .12. However, "contributory negligence has no place in a case of involuntary manslaughter, [and] if the criminal negligence of the [accused] is found to be the cause of death, [he] is criminally responsible, whether the decedent's failure to use due care contributed to the injury or not." Hubbard v. Commonwealth, 243 Va. 1, 14, 413 S.E.2d 875, 882 (1992) (alterations in original) (quoting Bell, 170 Va. at 616, 195 S.E. at 683). "Only if the conduct of the deceased amounts to an independent, intervening act alone causing the fatal injury can the accused be exonerated from liability for his or her criminal negligence. In such case, the conduct of the accused becomes a remote cause." Id. (citation omitted).

Here, as discussed above, the evidence makes clear that Banks's negligent acts were not merely a "remote" cause of Aldrich's death. While Aldrich's level of intoxication may have affected his judgment in fleeing down the interstate exit ramp,

- 10 -

the record plainly shows that it was Banks's assault that left Aldrich lying in the road to be subsequently hit by an oncoming car.

For these reasons, we hold the trial court did not err in finding the evidence sufficient, as a matter of law, to prove beyond a reasonable doubt that Banks's conduct amounted to criminal negligence and was a proximate cause of Aldrich's death.  Accordingly, we affirm Banks's conviction of involuntary manslaughter.

<u>Affirmed.</u>