COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Frank and Clements
Argued by teleconference and at Richmond, Virginia


BRIAN NEIL WOOD

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1078-07-2            JUDGE JEAN HARRISON CLEMENTS
                                                         OCTOBER 7, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

Craig S. Cooley; Brice E. Lambert (Lambert & Associates, on brief),
for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Craig W. Stallard, Assistant Attorney General, on
brief), for appellee.

Brian Neil Wood (appellant) was convicted in a bench trial of two counts of taking

indecent liberties with a child under fourteen years of age pursuant to Code § 18.2-370, four

counts of forcible sodomy pursuant to Code § 18.2-67.1, and five counts of aggravated sexual

battery of a child less than thirteen years of age pursuant to Code § 18.2-67.3.[1]  On appeal,

appellant contends the trial court erred 1) when it found evidence sufficient to sustain

convictions for conduct relating to victim K.P., and 2) finding the evidence sufficient to prove

that victim A.G. was under the age of thirteen at the time of appellant's sexual contact with her.

Finding no error, we affirm the trial court's judgment and appellant's convictions.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was also convicted of production and possession of child pornography
pursuant to Code § 18.2-374.1 and Code § 18.2-374.1:1.  Although included in the notice of
appeal, these convictions are not included in his questions presented.

As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I.  ABUSE OF K.P.

### A.  Background

"Under familiar principles of appellate review, we view the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003).  "We are bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc).  Accordingly, the evidence here shows that K.P. was born on July 15, 1996, and that she entered the fifth grade in September 2006.  From August 2002, appellant lived in a house owned by his father with several other people; including K.P.'s mother, Shannon, Shannon's boyfriend, Luke, and their infant son.  K.P. lived in the same house from August 2002 to August 2004.  Shannon testified that, at some point while K.P. lived with them, there had been a suggestion by someone other than K.P. of some "kind of sexual activity" occurring between K.P. and appellant.  The Department of Social Services (DSS) investigated, but made no apparent findings.  In response to her mother's questions on "repeated occasions," K.P. denied any sexual contact with appellant.

Appellant moved out in late 2004 or early 2005 after an argument with Shannon and a subsequent physical altercation with Luke.  He moved back approximately nine months later, in October 2005, and two weeks after his return he was confronted regarding his conduct with K.P.

that is the subject of this appeal. Shannon testified that it was the first time K.P. admitted that appellant had abused her.

At trial on October 17, 2006, K.P. testified that appellant asked her into his bedroom to watch pornography on his computer while she ate ice cream. She was able to testify as to what kind of ice cream she was eating and what appellant was wearing. She then left his room for "maybe a couple of minutes or maybe like half an hour" before appellant asked her back into his room. He then disrobed and told her to watch while he masturbated to completion. K.P. testified that on a later occasion appellant had her place a condom on his penis and put his penis into her mouth. She was able to testify as to what they were both wearing at the time of the incident and that the incident occurred in the morning. On several occasions, K.P. testified, appellant gave her money to "get on top of him or [else] he would get on top of [her]" as they moved "back and forth," sometimes without clothing. On several occasions appellant sucked her toes. K.P. maintained that, while she was unsure of the specific date or year of the events that were the subject of her testimony, the abuse occurred "last year," while she was in the fourth grade. She also maintained that appellant was living in the same house with her at the time of the abuse. K.P. guessed that she had seen appellant's penis "over ten" times, but did not remember any distinguishing characteristics on or around appellant's genitalia. K.P. testified that the reason she had earlier denied any sexual contact with appellant was out of fear she might "get in trouble." She finally decided to tell her mother about the pattern of abuse after she and her mother watched a television program about "kids getting molested and raped." K.P. also testified that appellant had said "bad things" to Shannon and that Luke had beaten him up as a result.

A.G. testified that she had seen appellant's genitalia many times and that he has four easily visible rectangular scars of white, hairless skin, approximately four inches wide by six inches long

on his upper thighs around his genitalia. A.G. testified that appellant also sucked her toes when she was eight years old.

For his conduct with K.P., appellant was indicted for one count of indecent liberties pursuant to Code § 18.2-370, one count of forcible sodomy pursuant to Code § 18.2-67.1, and one count of aggravated sexual battery of a child less than thirteen years of age pursuant to Code § 18.2-67.3, each for behavior occurring between August 1, 2002 and August 31, 2004. He was convicted as charged, and this appeal followed.

### B. Analysis

The credibility of witnesses and the weight to be accorded their testimony are matters solely for the fact finder, who has the opportunity to see and hear the witnesses, to observe their demeanor, and to weigh their explanation of events. Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995); Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985). The determination by the finder of fact that a witness is credible "may only be disturbed on appeal if this Court finds that [the witness'] testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" Robertson v. Commonwealth, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991) (quoting Fisher v. Commonwealth, 228 Va. 296, 299-300, 321 S.E.2d 202, 204 (1984)).

K.P. testified that the abuse occurred while she was in fourth grade, and appellant relies thereon to contend that the abuse she alleges could not have occurred during the time period set forth in the indictment.[2] However, K.P. testified unequivocally that the abuse occurred while appellant was living in the same house—a period corresponding to the dates alleged in the indictments—and her confusion regarding what grade she was in at that time does not render her

---

[2] Appellant asserts that "none of K.P.'s fourth grade year fell inside [the indictment's] offense dates." For purposes of this opinion, we accept the accuracy of that assertion.

- 4 -

testimony inherently incredible or unworthy of belief. Indeed, human experience suggests that a ten-year-old girl testifying as to events occurring more than a year prior could testify truthfully and accurately regarding what happened, even while unable to pinpoint with accuracy the relative time period. Here, K.P.'s unequivocal testimony, along with her recollection of peripheral detail, could lead a rational fact finder to credit her testimony concerning the events at the time of the abuse while rejecting a portion of the timeline she advanced, see, e.g. Marable v. Commonwealth, 27 Va. App. 505, 509-10, 500 S.E.2d 233, 235 (1998) (recognizing that a fact finder may accept or reject a witness' testimony in whole or in part), and we therefore cannot say that the trial court plainly erred or was without evidence to do so.

Appellant also argues that K.P.'s testimony was insufficient to prove appellant's guilt in the "total absence" of corroboration. We disagree.

> [A] conviction for [a] sexual offense[] may be sustained solely upon the uncorroborated testimony of the victim. Garland v. Commonwealth, 8 Va. App. 189, 191-93, 379 S.E.2d 146, 147 (1989); see also Willis & Bell v. Commonwealth, 218 Va. 560, 563, 238 S.E.2d 811, 812 (1977) (noting that convictions for crimes of a sexual nature may depend upon the "uncorroborated testimony of a prosecutrix if her evidence is credible, and the guilt of the accused is believed by the [fact finder] beyond a reasonable doubt"). ["B]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished." Garland, 8 Va. App. at 192, 379 S.E.2d at 147.

Wilson v. Commonwealth, 46 Va. App. 73, 87-88, 615 S.E.2d 500, 507 (2005). We note initially that A.G.'s testimony is somewhat corroborative insofar as she testified appellant engaged her in the same peculiar lewd conduct involving the sucking of toes when she was around the same age as K.P. However, even were it not so, a rational finder of fact could determine that K.P. had satisfactorily explained her earlier denials, and the trial court was under no obligation to accept appellant's theory that his argument with Shannon was a motive for K.P. to prevaricate. Finally, we

do not find it compelling that a child of eight or nine years was unable to distinguish the peculiar characteristics of appellant's genitalia that set it apart from the norm, and the trial court was not plainly wrong to give that failure little weight as it evaluated her credibility. See, e.g., Sandoval, 20 Va. App. at 138, 455 S.E.2d at 732.

We therefore affirm the convictions arising from appellant's acts upon K.P.

## II. A.G.'S AGE AT THE TIME OF THE ABUSE

### A. Background

A.G. was born on November 15, 1984. Appellant was married to her older sister. A.G. testified that when she was eight, appellant put her toe in his mouth during a game of hide and seek. She testified that "right after mom died in 1994" appellant began a "physical relationship" with her. She testified that appellant had cunnilingual contact with her "too many [times] to count," beginning around the time of her first menses, which occurred when she was eleven years old, or perhaps when she was thirteen. A.G. testified that when she was twelve she began touching appellant's penis and that she did so "a lot." She admitted that around the same time she was often under the influence of several perception altering substances—including LSD, marijuana, cocaine, "ecstasy," and alcohol. And while these substances made it difficult—and sometimes impossible—for her to recall "stuff that happened" to her, the incidents that were the subject matter of her testimony "stand out." On cross-examination, A.G. testified concerning appellant's conduct that she did not "actually remember how old [she] was, but [she knew she] was under the age of thirteen." When asked how she could be certain, she testified that she knew the behavior at issue occurred before her three-month detention in a juvenile facility. A.G.'s detention occurred one month before she turned fourteen, and she went to live with her aunt immediately after her release.

B.  Analysis

On appeal, appellant challenges only the sufficiency of the evidence that A.G. was under the age of thirteen at the time of his sexual conduct with her.  "We must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."  Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988).  While A.G. was not certain of the dates involved, she was unequivocal that she had been under the age of thirteen at the time of the contact, basing her certainty on the relative dates of momentous events in her life.  The trial court accepted her testimony, and, in light of A.G.'s explanation and under the standard of review we must apply, we cannot say its decision to do so was plainly wrong.

We therefore affirm the judgment of the trial court and appellant's convictions.

Affirmed.