COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton,* Judges Frank and Clements
Argued at Chesapeake, Virginia


KEVIN EUGENE TWINE

                                                    OPINION BY
v.      Record No. 1306-05-1          JUDGE JEAN HARRISON CLEMENTS
                                                    MAY 16, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
Thomas N. Nance, Judge Designate

Joel W. Young (Phillips & Bartlett, P.C., on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


        Kevin Eugene Twine was convicted in a bench trial of grand larceny, in violation of Code

§ 18.2-95. The conviction arose from the shoplifting of numerous razors, over-the-counter

medications, and other merchandise from a Food Lion store. On appeal, Twine contends the trial

court erred in admitting into evidence, over his hearsay objection, a cash register receipt

generated by scanning the bar codes on the shoplifted items to establish the value of the stolen

merchandise. Twine further contends that, absent the improperly admitted register receipt, the

evidence was insufficient to sustain his conviction for grand larceny. Finding no error, we affirm

the judgment of the trial court and Twine's conviction.

I. BACKGROUND

        "Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

_____

        * On April 1, 2006, Judge Felton succeeded Judge Fitzpatrick as chief judge.

the party that prevailed below." Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003). So viewed, the evidence established that, on the evening of July 29, 2004, Twine and his accomplice, Demetrius Gray, were observed acting suspiciously in a Food Lion store. The acting store manager called the police after he saw Twine placing merchandise in his pants. Twine, the manager observed, had merchandise "all the way down [each] leg" of his pants and was unable to "walk that well" as a result. Twine and Gray then left the store without paying for the merchandise and went to their car.

Responding to the shoplifting call, Sheriff's Deputy James Hazelwood arrived at the Food Lion store as Twine and Gray were about to leave the parking lot. The acting store manager pointed them out to the deputy, and he pulled their car over a few blocks away. Sheriff's Deputy Reginald Simms arrived at the scene of the stop soon thereafter.

When Deputy Hazelwood approached the car and asked Gray, the driver, if he had taken anything from the Food Lion, Gray responded, "You got me, man. You got me." He and Twine then "started pulling stuff out of [their] pants," placing it on the front seat between them. Both men had stolen merchandise inside their "bulky" pants, including "down in the leg[s] of the pants." Gray informed the police that the items in his pants were from the Food Lion. After collecting the stolen items from the front seat and placing them in a plastic bag, Deputy Simms took the items "back to Food Lion to verify that they came from Food Lion and to get a total price."

At the Food Lion, Deputy Simms emptied the bag of stolen items "onto the belt" of a cash register. The store's "manager for the front end registers" then scanned and rung up the stolen merchandise at the cash register, and a cash register receipt was produced showing the name and price of each item and the total combined price of the merchandise. The receipt was

given to Deputy Simms, who "turned it into [the Department's property storage unit] with Deputy Hazelwood."

At trial, Deputy Hazelwood testified that he brought the cash register receipt given to him by Deputy Simms to court that day. Asked to examine the receipt, which was marked for identification purposes as Commonwealth's Exhibit 1, Deputy Simms identified it as the cash register receipt from the Food Lion store generated by scanning and ringing up the shoplifted merchandise Twine and Gray had removed from their pants.

Ann Vance testified that she was on duty as a cashier at the Food Lion "[w]hen [Deputy Simms] brought the [stolen] items back" into the store. Vance further testified that she was standing right next to the register where the retrieved merchandise was scanned and that she observed each item as it was being scanned and rung up at the register. According to Vance, the stolen items did not have individual price tags on them. Instead, they had bar codes on them that were used to scan and ring up the items at the register. "The bar codes," Vance testified, "are the price tags."

Asked at trial to examine Commonwealth's Exhibit 1, Vance testified that the date and time imprinted on the receipt corresponded with the date and time she saw the stolen merchandise being scanned and rung up. Vance further testified that, although she could not independently recall and name each item she saw being rung up, the name and price of the items listed on the cash register receipt corresponded with her "recollection and understanding of what was rung up." Asked to mark each item listed on the receipt that she saw being scanned and rung up on the register, Vance testified that she saw every item on the receipt being scanned and rung up. She then checked each item listed on the receipt. She also testified that, while she was unable to independently recall and recite the exact prices of the items she saw being scanned, she

was "familiar with the prices" of the stolen items and each item listed on the receipt appeared to have the right price listed next to it.

Over Twine's hearsay and best evidence objections, the trial court admitted the cash register receipt into evidence to establish the value of the stolen merchandise. The receipt listed each scanned item's description and the item's price. The receipt showed that the stolen merchandise consisted of seventy-five items—twenty razors, five packs of razor-blade cartridges, eighteen Tylenol products, thirteen Advil products, one Aleve product, eight Claritin products, four Pepcid products, two Prilosec products, three various ointments, and one facial cleanser—individually priced between $3.19 and $12.59. The receipt indicated that the total pre-tax price of the seventy-five items of stolen merchandise was $693.29. Twine offered no evidence at trial to refute the prices of the stolen items listed on the receipt.

At the conclusion of the Commonwealth's case-in-chief and again at the conclusion of all the evidence, Twine implicitly renewed his hearsay objection to the admission into evidence of the cash register receipt, and moved to strike the evidence, arguing that, sans the improperly admitted receipt, the evidence was insufficient to prove the stolen merchandise was valued at $200 or more. The trial court denied the motions to strike and found Twine guilty as charged.

This appeal followed.

## II. ANALYSIS

On appeal, Twine contends "the trial court misapplied the 'price tag' exception" to the hearsay rule in this case because "no price tags were introduced and there was no testimony concerning the amounts shown on the price tags." Thus, he concludes, the trial court erred in applying the price tag exception and allowing the Commonwealth to introduce the cash register receipt into evidence to establish the value of the stolen merchandise, over his hearsay

objection.[1] Twine further contends that, without the inadmissible register receipt, the evidence failed to show that the value of the shoplifted merchandise was at least $200 and was thus insufficient to establish anything more than petit larceny. We hold that the register receipt was properly admitted into evidence and the evidence was thus sufficient to sustain Twine's conviction for grand larceny.

To convict a shoplifter of grand larceny, the Commonwealth must prove beyond a reasonable doubt that the value of the stolen merchandise was $200 or more. See Code § 18.2-95(ii); Parker v. Commonwealth, 254 Va. 118, 120-21, 489 S.E.2d 482, 483 (1997) ("While evidence that an article has some value is sufficient to sustain a conviction for petit larceny, when the value of the stolen item determines the grade of the offense, the Commonwealth must prove the value to be at least the statutory amount."). The relevant value is the stolen merchandise's retail value at the time of the shoplifting. See Robinson v. Commonwealth, 258 Va. 3, 5, 516 S.E.2d 475, 476 (1999) ("The test is market value, and particularly retail value."); Parker, 254 Va. at 121, 489 S.E.2d at 483 ("The value of the stolen property is measured as of the time of the theft, and the original purchase price may be admitted as evidence of its current value.").

Here, the Commonwealth offered the cash register receipt generated by scanning the bar codes on the shoplifted items recovered from Twine and his accomplice to prove the aggregate value of the stolen merchandise was $200 or more. A Food Lion cashier testified that she observed each of the stolen items listed on the receipt being scanned and rung up at the Food

---

[1] Despite acknowledging that the "trial judge sustained [his] objection to admission of the [register receipt] under the business records exception to the hearsay rule," Twine also devotes a substantial portion of his appellate brief to a discussion of the applicability of that exception in this case. Given the trial court's sustainment of Twine's objection under the business records exception and our resolution of this case, we need not address the business records exception in this appeal.

Lion register. Relying on the price tag exception to the hearsay rule established in Robinson, 258 Va. at 10, 516 S.E.2d at 479, the trial court admitted the receipt into evidence over Twine's hearsay exception.[2]

It is well established that "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). However, "a trial court 'by definition abuses its discretion when it makes an error of law.'" Shooltz v. Shooltz, 27 Va. App. 264, 271, 498 S.E.2d 437, 441 (1998) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). "In determining whether the trial court made an error of law, 'we review the trial court's . . . legal conclusions *de novo*.'" Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001) (quoting Timbers v. Commonwealth, 28 Va. App. 187, 193, 503 S.E.2d 233, 236 (1998)).

---

[2] Although the trial court did not articulate the specific basis for its decision to admit the register receipt into evidence, it is clear from the record that the trial court admitted the receipt under the price tag exception set forth in Robinson. When the prosecutor first offered the receipt for admission into evidence, she suggested it was admissible under the business records exception. After discussion and further *voir dire* of Vance, the trial court sustained Twine's objection to admission under that exception. The prosecutor subsequently suggested the receipt was admissible under Robinson, "where the value of the items stolen was established by the testimony of the employees concerning the prices of the items." The trial court agreed that Robinson had "to do with . . . proving the value [of the stolen items] and not [the] business records exception." Twine's counsel then argued:

> Judge, I would object to [the admission into evidence of the cash register receipt]. It's not the best evidence of the items themselves. There's not a price tag exception in this case, and so the items I think need to be here in order for the -- in evidence themselves, and not simply a cash register receipt of items. I don't think that falls under the price tag exception, so I would object to that.

Disagreeing with defense counsel and stating that "[a witness from Food Lion] by use of this [cash register receipt] says she saw each of these items being scanned," the trial court admitted the receipt into evidence.

In Robinson, our Supreme Court recognized an exception to the hearsay rule in shoplifting cases allowing the admission into evidence of the information on price tags affixed to the stolen items of merchandise to establish the value of that merchandise. 258 Va. at 10, 516 S.E.2d at 479. In that case, the appellant challenged his conviction of grand larceny for the theft from a department store of three sports coats. Id. at 5, 516 S.E.2d at 476. The only evidence presented by the Commonwealth at trial to prove the value of the stolen merchandise was the testimony of two store employees regarding the amounts they had observed on the price tags affixed to the coats. Id. at 6, 516 S.E.2d at 476. The appellant contended the trial court erred in admitting the "double hearsay" testimony of store employees as evidence of the stolen merchandise's market value. Id. at 7, 516 S.E.2d at 477. Affirming the trial court's action, the Supreme Court stated as follows:

> What is involved here is a simple, uncomplicated matter. Shoplifting is something that occurs thousands and thousands of times throughout this country every day. It is common knowledge that department and other stores regularly affix price tags to items of merchandise and that the tagged price is what a purchaser must pay to acquire an item, without the opportunity to negotiate a reduced price or to question how the tagged price was reached.
>     Under these circumstances, "the inherent unreliability of hearsay is not present." State v. White, 437 A.2d [145,] 148 [(Conn. Super. Ct. 1981)]. Therefore, it would be unreasonable and unnecessary to require that in each case a merchant must send to court not only a security person but also other personnel to establish the reliability of the information shown on a price tag affixed to an item that has been stolen.
>     Rather, we think the common-sense approach to the problem is to recognize an exception to the hearsay rule in shoplifting cases permitting the admission into evidence of price tags regularly affixed to items of personalty offered for sale or, in substitution, testimony concerning the amounts shown on such tags when, as in this case, there is no objection to such testimony on best evidence grounds. While such evidence, when admitted, would suffice to make out a prima facie case of an item's value, the accused would retain full opportunity to cross-examine adverse witnesses and to present rebutting evidence on the issue of value. See State v. White, 437 A.2d at 148. For example, if a store conducts a sale but computes the reduced price at the cash register

> rather than marking the change on the price tag, an accused would be entitled to rely upon the reduced price as evidence of the item's value.
>
> The evidence in the present case falls within the exception we now recognize to the hearsay rule.

Id. at 10, 516 S.E.2d at 478-79.

We agree with the trial court that the "common-sense approach" taken by the Supreme Court in Robinson applies to the valuation evidence at issue in the present case. Although dissimilar to the items of merchandise shoplifted in Robinson in that they did not have tags affixed to them by the retailer displaying their prices, the stolen items of merchandise recovered from Twine and his accomplice in this case did have individual bar codes on them that, when scanned at a cash register at the store from which they were stolen, revealed their purchase prices. Indeed, the scan of the shoplifted items produced a receipt, which summarized the prices charged by Food Lion for the merchandise that was stolen. It is common knowledge that many grocery and other stores now regularly use the bar codes that appear on the packaging of most consumer goods to identify the prices charged by the store for those goods at the time of purchase. Under such a system, the price of an item is typically displayed on the shelf directly above or below that item in the store rather than on the item itself. When a customer elects to purchase the item, the bar code imprinted on or attached to the item is scanned at a cash register. Reading the bar code and accessing the electronic data associated with that bar code, the register rings up the product, displays its name and purchase price, and prints that information on a cash register receipt. When all of the items being purchased have been scanned, the register displays the sum of their prices and prints that amount on the receipt.

Because, when scanned, they disclose to the cashier and the customer the current pricing information for the items being purchased, the bar codes on products are, as the cashier from Food Lion explained, "the price tags" for those items. The bar codes by themselves, however,

are not readily decipherable by a judge or jury in a grand larceny prosecution. It is the receipt generated by scanning the bar codes at a cash register that summarizes the purchase prices of the items in a form that is comprehensible to the fact finder at trial. Plainly, such a receipt is no less inherently trustworthy and reliable than the testimonial valuation summaries admitted into evidence in Robinson.[3] Indeed, in Robinson, the Supreme Court recognized that the amount listed on a price tag affixed to an item by the retailer may not accurately reflect the price the customer will pay for that item because, during a sale, a store may "compute[] the reduced price *at the cash register* rather than marking the change on the price tag." Id. at 10, 516 S.E.2d at 479 (emphasis added).

Accordingly, we hold that the price tag exception to the hearsay rule in shoplifting cases recognized by the Supreme Court in Robinson permits the admission into evidence of a cash register receipt generated by scanning the bar codes on the stolen items of merchandise "or, in substitution, testimony concerning the amounts shown on such [a receipt] when . . . there is no objection to such testimony on best evidence grounds." Id. "While such evidence, when admitted, would suffice to make out a prima facie case of an item's value, the accused would retain full opportunity to cross-examine adverse witnesses and to present rebutting evidence on the issue of value." Id.

Twine further argues that, even if Robinson were found to apply to the present case, the cash register receipt may not be properly admitted into evidence under the circumstances of this case because he "made an objection on best evidence grounds to testimony concerning the amount on the price tags." As Twine correctly points out, the exception to the hearsay rule

---

[3] As previously mentioned, the only evidence presented in Robinson concerning the value of the stolen coats came from two store employees. One employee testified "the value of the coats totaled $499.97" and "he knew what the value was because 'that's what it is on the price tags.'" The other employee testified the coats "were valued at $499.97 and that she knew the value from the 'tickets [that] were attached to the [coats].'" 258 Va. at 6, 516 S.E.2d at 476.

recognized by the Supreme Court in Robinson permits "the admission into evidence of price tags regularly affixed to items of personalty offered for sale or, in substitution, testimony concerning the amounts shown on such tags *when . . . there is no objection to such testimony on best evidence grounds*." (Emphasis added.) Twine, however, misreads the Supreme Court's holding in Robinson and mischaracterizes his objection. The reference in Robinson to an "objection to such testimony on best evidence grounds" plainly encompasses only properly sustainable best evidence objections and speaks not to the admissibility of the written price tags themselves but to the admissibility of *testimonial* evidence "concerning the amounts shown on such tags." See generally Bradshaw v. Commonwealth, 16 Va. App. 374, 379, 429 S.E.2d 881, 884 (1993) ("In Virginia, the best evidence rule provides that 'where the contents of a writing are desired to be proved, the writing . . . itself must be produced or its absence sufficiently accounted for before other evidence of its contents can be admitted.'" (quoting Randolph v. Commonwealth, 145 Va. 883, 889, 134 S.E. 544, 546 (1926))).

In this case, Twine objected on best evidence grounds solely to the admission of the written cash register receipt, not, as he states on appeal, "to testimony concerning the amount on the price tags." Indeed, as Twine notes in his appellate brief, there was no testimony presented at trial establishing the value of the stolen merchandise. Instead, the Commonwealth relied solely on the written cash register receipt. Moreover, Twine's best evidence objection to the receipt was properly overruled by the trial court. Twine argued at trial that the seventy-five items of stolen merchandise needed to be admitted into evidence to establish their value. However, the stolen items had no pricing information on them except for their bar codes. The items themselves, therefore, would have been meaningless to the fact finder at trial, without a printout of the prices generated by scanning the bar codes on the products at a register. Thus, the register

receipt, which listed the actual purchase price of each of the items shoplifted from Food Lion by Twine and his accomplice, constituted the best evidence of the stolen merchandise's retail value.

We hold, therefore, that the trial court did not abuse its discretion in admitting the cash register receipt into evidence under the price tag exception to the hearsay rule recognized in Robinson. Because the receipt was properly admitted and established that the value of the merchandise stolen by Twine and his accomplice was $693.29 and because Twine offered no evidence at trial to refute the prices of the stolen items listed on the receipt, we further hold the evidence was sufficient to sustain Twine's conviction for grand larceny.

## III. CONCLUSION

For these reasons, we affirm the judgment of the trial court and Twine's conviction.

Affirmed.