COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges McCullough, Huff and Senior Judge Haley
Argued at Chesapeake, Virginia


JEROME CLAY CALFEE

                                            MEMORANDUM OPINION* BY
v.       Record No. 0625-13-1                JUDGE JAMES W. HALEY, JR.
                                                  MAY 13, 2014

COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                          John W. Brown, Judge

           M. Colston Jones, Assistant Public Defender (Office of the Public
           Defender, on brief), for appellant.

           Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
           Attorney General, on brief), for appellee.


       Jerome Clay Calfee, appellant, appeals his conviction for grand larceny in violation of Code

§ 18.2-95.  On appeal, appellant contends the trial court erred by admitting into evidence the receipt

created by Walmart store employees to demonstrate the value of the items allegedly stolen.  He also

argues the evidence was insufficient to establish he had the intent to deprive Walmart of all the

property contained in the shopping cart.  We affirm the decision of the trial court.

       Jacklyn Hyater worked as an asset protection associate at Walmart.  At about 11:10 p.m.

on August 26, 2012, she saw appellant pushing a shopping cart containing merchandise.  Hyater

testified that appellant drew her attention because his shopping cart contained "several different

kinds of laundry detergent, several different kinds of beer, [and] several different kinds of

tissue."  Hyater followed appellant throughout the store as appellant put additional items into the

cart.  Hyater saw appellant remove a plastic Walmart bag from his pocket and place some of

_____
       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

items from the shopping cart into the bag. Hyater testified that, after he placed some of the merchandise into the Walmart bag, appellant pushed the shopping cart throughout the store. He passed a closed cash register, and he passed the last point of sale as he walked toward the exit of the store.

Hyater approached appellant when he was in the vestibule area near the exit of the building. She identified herself as an asset protection officer, and she asked appellant to accompany her back into the store. Appellant followed Hyater. Hyater testified appellant acted "a little jittery" when they arrived at the office door. He then fled without taking the merchandise. Hyater pursued appellant, and appellant encountered a police officer near the door of the store. The police officer saw Hyater was chasing appellant and he asked appellant to stop, but appellant tried to run past him. The officer apprehended appellant by taking him "to the ground."

Hyater testified she took the shopping cart to a cash register and watched the customer service representative "ring up" the merchandise from the cart by scanning the UPC codes on the items. In response to a question from the trial court, Hyater agreed that the UPC is the "methodology" used by Walmart to identify items and the price of each item.

Hyater obtained the receipt from the cash register, and she photographed the items in the cart. The receipt showed the total value of the items in the shopping cart and in the Walmart bag was $249.52. Hyater testified she did not personally know the price of each of the items in appellant's shopping cart.

At trial, appellant objected to the trial court's admission of the cash register receipt into evidence, arguing that a proper foundation for the admission of the receipt had not been established because Hyater was not sufficiently familiar with the price of the items. The trial court overruled appellant's objection and admitted the receipt.

At the end of the trial, appellant argued the evidence was insufficient to prove he had formed the intent to permanently deprive Walmart of all of the merchandise. The trial court found that appellant's conduct of concealing some of the items in the plastic bag, walking into the vestibule without paying for the items, and his attempted flight from the scene supported the conclusion that appellant intended to steal the items and he committed grand larceny.

Appellant appealed his conviction to this Court.

Appellant argues the trial court erred by admitting the cash register receipt into evidence because Hyater did not have sufficient familiarity with the prices of the merchandise and the accuracy of the price information reflected on the receipt.

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling on appeal will not be disturbed in the absence of an abuse of discretion." Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The Supreme Court of Virginia "recognized an exception to the hearsay rule in shoplifting cases permitting the admission into evidence of price tags regularly affixed to items of personalty offered for sale or, in substitution, testimony concerning the amounts shown on such tags when . . . there is no objection to such testimony on best evidence grounds" in order to establish the value of the items. Robinson v. Commonwealth, 258 Va. 3, 10, 516 S.E.2d 475, 479 (1999) (involving employee testimony regarding value based on employees' observations of amounts they observed on price tags affixed to stolen items).

Appellant relies on Twine v. Commonwealth, 48 Va. App. 224, 629 S.E.2d 714 (2006), in support of his argument. In Twine, the defendant was convicted of grand larceny for shoplifting various items from a grocery store. Twine argued the trial court erred when it admitted into evidence a receipt that was generated by scanning the bar codes of the various items Twine was accused of stealing. Twine, 48 Va. App. at 226, 629 S.E.2d at 715. A cashier

from the grocery store testified she observed the items scanned and the receipt generated by the cash register. She testified "the name and price of the items listed on the cash register receipt corresponded with her 'recollection and understanding of what was rung up.'" Id. at 228, 629 S.E.2d at 716. She further stated that, although she could not recall the exact prices of the items she saw scanned, she was "'familiar with the prices' of the stolen items and each item listed on the receipt appeared to have the right price listed next to it." Id.

Appellant argues the instant case is distinguishable from Twine because, here, Hyater testified that she was not personally familiar with the actual prices of the items. Although the cashier in Twine testified she was "familiar with the prices" of the items listed on the receipt and the receipt appeared to have the correct prices, the Court's decision in the case did not turn on that testimony. Rather, this Court found, "[b]ecause, when scanned, they disclose to the cashier and the customer the current pricing information for the items being purchased, the bar codes on products are, . . . 'the price tags' for those items." Id. at 234, 629 S.E.2d at 719. "It is the receipt generated by scanning the bar codes at a cash register that summarizes the purchase prices of the items in a form that is comprehensible to the fact finder at trial." Id. at 233, 629 S.E.2d at 719. "Plainly, such a receipt is no less inherently trustworthy and reliable than the testimonial valuation summaries admitted into evidence in Robinson." Id. (footnote omitted). Thus, the Court held "the price tag exception to the hearsay rule in shoplifting cases recognized by the Supreme Court in Robinson permits the admission into evidence of a cash register receipt generated by scanning the bar codes on the stolen items of merchandise . . . ." Id. at 234, 629 S.E.2d at 719.

Furthermore, Hyater was present when the customer service manager scanned the bar codes of the items in appellant's cart and Hyater photographed the items in the cart. The trial judge noted that the cash register receipt contained thirty-seven items, and he counted

- 4 -

thirty-seven items depicted in the photographs. The trial judge also stated that he reviewed a number of the items listed on the cash register receipt and "every item I looked at on the Walmart cash register receipt was, in fact, pictured."[1] Accordingly, the trial court did not abuse its discretion by admitting the cash register receipt into evidence.

Appellant also argues the evidence was insufficient to establish his "intent to deprive Walmart of all of the property contained in the shopping cart, as opposed to the items concealed within the Walmart shopping bag."

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

> The specific intent to commit [a crime] may be inferred from the conduct of the accused if such intent flows naturally from the conduct proven. Where the conduct of the accused under the circumstances involved points with reasonable certainty to a specific intent to commit [the crime], the intent element is established.

Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 674 (1995) (citation omitted).

We ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). In doing so, we are mindful that "great deference must be given to the fact finder who, having seen and heard the witnesses, assesses their credibility and weighs their testimony." Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1988).

---

[1] Moreover, as explained in Twine, "'[w]hile such evidence, when admitted, would suffice to make out a prima facie case of an item's value, the accused would retain full opportunity to cross-examine adverse witnesses and to present rebutting evidence on the issue of value.'" Id. at 234, 629 S.E.2d at 719 (quoting Robinson, 258 Va. at 10, 516 S.E.2d at 479).

The evidence showed that while appellant was inside the store, he placed numerous items into a shopping cart and he concealed some of those items in a plastic Walmart bag he removed from his pocket. Appellant continued to push the shopping cart containing all of the items, not just the items he had concealed in the Walmart bag. He pushed the cart past a closed cash register, past the other points of sale, and into the vestibule area located near the exit doors. Appellant was in the vestibule area of the store when Hyater stopped him. He acted "jittery" while he was in the presence of Hyater, and he attempted to flee from both Hyater and the police officer. "Flight following the commission of a crime is evidence of guilt . . . ." Clagett v. Commonwealth, 252 Va. 79, 93, 472 S.E.2d 263, 271 (1996).

From the evidence of appellant's conduct throughout the incident, the trial court could infer that appellant intended to steal all of the items in the shopping cart, not just the bagged merchandise. Accordingly, the evidence was sufficient to prove beyond a reasonable doubt that appellant committed grand larceny.

For the foregoing reasons, we affirm appellant's conviction.

<u>Affirmed.</u>