COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Decker and O'Brien
Argued at Norfolk, Virginia

BRONSON ANTHONY CUNNINGHAM

v.     Record No. 0240-17-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE MARLA GRAFF DECKER
MARCH 20, 2018

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
H. Thomas Padrick, Jr., Judge

Taite A. Westendorf (Office of the Public Defender, on brief), for
appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Bronson Anthony Cunningham appeals his conviction for concealment, a third or

subsequent offense, in violation of Code §§ 18.2-96, -103, and -104. He asserts that the

circumstantial evidence was insufficient to prove that he willfully concealed merchandise with the

intent to convert it to his own use. Specifically, the appellant suggests that the evidence did not

exclude the reasonable theory that he left the missing item in question in the store prior to leaving

since it was never recovered. We hold that the evidence, viewed under the proper standard,

supports the trial court's determination that the appellant committed the offense of concealment.

Consequently, we affirm the conviction.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND[1]

The appellant's conviction is based on his behavior in a Virginia Beach Walmart on the afternoon of September 30, 2015.  At the appellant's bench trial, Christen Blake, a loss prevention officer for the store, testified regarding her observations of the appellant as she surveilled him.  The appellant drew her attention because he was wearing a large backpack and exhibited certain suspicious behavior.  Blake described his demeanor, including "the way he . . . mov[ed]" and continuously "looked around," as "a little odd."  She further noticed that he was carrying a motorcycle helmet.

As Blake watched from a distance of about ten feet, the appellant picked up a box containing a motorcycle tank bag, a small bag designed to adhere magnetically to a motorcycle's gas tank.  The appellant looked right and left and examined the box.  He then removed the tank bag from the box and placed the empty box back on the shelf, behind another box containing the same product.  He also picked up a Walmart backpack, which was larger than the tank bag.  He held the tank bag behind the Walmart backpack.[2]  With the tank bag partially obscured by the Walmart backpack, the appellant walked into the men's restroom carrying the two items in the same hand.

While the appellant was in the restroom, fellow employee Vanessa Luna-Caban joined Blake in her surveillance.  When the appellant emerged from the restroom less than two minutes

---

[1] On appellate review, the Court views the facts established at trial "in the 'light most favorable' to the Commonwealth, the prevailing party below," and "grant[s] to that party all fair inferences flowing" from those facts.  Brittle v. Commonwealth, 54 Va. App. 505, 509-10, 680 S.E.2d 335, 338 (2009) (quoting Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003)).

[2] The appellant's personal backpack was on his back at all times when he was in view of the loss prevention officers.

after entering, he was holding only his motorcycle helmet and the Walmart backpack. His personal backpack remained on his back, and the tank bag was not visible.

Blake and Luna-Caban followed the appellant as he "walked . . . back to the shelf" where he had obtained the tank bag, and they watched as he "messed around with another box or so." Then he walked through several other departments as he made his way toward the front of the store, while Blake and Luna-Caban continued to watch him from parallel aisles.[3] When the appellant reached the front of the store, he put the Walmart backpack in the "reshop cart," a location "designated . . . for shoppers to put [items] that they don't want to buy." Without stopping at any of the cash registers, he walked through the first set of two sets of doors leading out of the store, as he proceeded to leave.

At the same time, Officer J.W. Shank, a uniformed officer with the Virginia Beach Police Department, was entering the store on an unrelated matter. One of the loss prevention employees asked Shank to "wait a second because they were approaching somebody." With Shank waiting nearby, Blake and Luna-Caban "attempted to apprehend" the appellant as soon as he walked toward the second set of doors that led outside. Blake stood "directly in front of" the appellant at a distance of two feet. She identified herself by name and occupation, and asked the appellant to "step[] in[to]" her office "to talk about the merchandise that [he] concealed." After she "said those words," the appellant "took off" running.

When the appellant ran, Officer Shank, who was standing nearby, said, "Stop, Police," and pursued him into the parking lot. The appellant continued to run away despite the threat of being shot with a Taser. Shank lost sight of the appellant, and police set up a perimeter for a search. While searching for the appellant, law enforcement did not find any discarded property

---

[3] The women maintained visual contact with the appellant as he moved through the store, although Blake admitted to losing that contact periodically as he was "walking in the aisle."

belonging to Walmart. Other officers apprehended the appellant a short time later in the bathroom of a nearby pawn shop. He and his backpack were searched, but no property belonging to Walmart was found.

Once the appellant was arrested for larceny, he repeatedly told Officer Shank that he did not steal anything. He asked to be taken back to the store so that he could show the officer "where the item was." Shank asked the appellant to describe where he had left it so that Shank could "have [other] officers go look for it." The appellant then "made a spontaneous statement that he thought it was his girlfriend stalking him and that's why he ran." The appellant never identified the item or told Officer Shank where he claimed to have left it inside the store.

Within two or three minutes of when the appellant fled from the Walmart, Blake and Luna-Caban began to search the store for the tank bag. They looked inside the backpack that the appellant had placed in the reshop cart as well as in the cart itself, and they searched the bathroom. They also searched the automotive department and checked all the aisles that they saw the appellant traverse as he walked from the automotive department to the exit. The empty box for the tank bag was found on the shelf where the appellant put it, but the tank bag was never found.

Additional evidence established that Walmart's inventory control system involved "scan[ning] . . . shelf availability" on a daily basis. Information from the inventory system regarding the suspected theft confirmed that an empty box for a motorcycle tank bag was found in the store on September 30, 2015, after the appellant fled, and that the tank bag itself was never found in the store. Walmart's inventory system further revealed that "the last time" anyone purchased a tank bag was more than four months prior to that date.

The Commonwealth showed multiple video clips from the store's surveillance system during the appellant's trial. Blake, who was present during all the events depicted in the relevant

footage, testified about them while parts of different videos were played. The trial court admitted into evidence the CD containing the videos. It also admitted four photographs produced from the store video footage. The photos show the appellant first exiting the restroom, then walking past "all points of sale" inside the store and, finally, running while in the store's vestibule between the inner and outer doors.

Based on the evidence and admitted copies of orders reflecting the appellant's three prior larceny convictions, the court found the appellant guilty of concealment of merchandise, third or subsequent offense. In convicting him, the court credited the testimony of the Walmart employees who watched the appellant "throughout all of this." It pointed to his attempt to conceal the tank bag behind another item of Walmart merchandise and the appellant's flight after he passed "the point of sale." The judge also noted the testimony concerning the store inventory, holding that "when you put it all together[,] . . . it's clear that beyond a reasonable doubt that [the appellant] did steal the item."[4] The court sentenced the appellant to three years in prison with two years nine months suspended.

## II. ANALYSIS

The appellant challenges the sufficiency of the evidence to prove that he concealed the motorcycle tank bag. In support of his contention, he argues that the evidence failed to exclude the

---

[4] In reviewing the evidence, the judge specifically stated, "[T]he testimony is that you get . . . beyond the point of sale, as shown in the video, and you look like you really were sprinting when you left . . . really fast." The appellant's act of "sprinting" is also clearly depicted in the photographs that were made from the surveillance video clips and admitted into evidence.

reasonable hypothesis that he left the bag in the store, relying on the fact that the bag was never located.[5]  We consider this challenge under the proper legal standards relating to an appeal.

On review of a criminal conviction, the appellate court "view[s] the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party that prevailed below."  Twine v. Commonwealth, 48 Va. App. 224, 226, 629 S.E.2d 714, 715 (2006) (quoting Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d 876, 877 (2003)).  This Court "is not permitted to substitute" as the trier of fact, who "s[aw] and hear[d] the witnesses" as they testified.  Commonwealth v. Taylor, 256 Va. 514, 518, 506 S.E.2d 312, 314 (1998).  Consequently, decisions regarding the credibility of the witnesses and the weight of the evidence are matters left solely to the fact finder below.  Redmond v. Commonwealth, 57 Va. App. 254, 265, 701 S.E.2d 81, 86 (2010).  In that same vein, the fact finder is not required to believe all aspects of a witness' statement or testimony.  E.g., Moyer v. Commonwealth, 33 Va. App. 8, 28, 531 S.E.2d 580, 590 (2000) (*en banc*).  Instead, the finder of fact may "accept [what] it finds to be believable" and "reject that which it finds implausible."  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).

---

[5] At the petition stage, this Court discovered that the CD of the video surveillance admitted in the trial court could not be viewed without functional proprietary software that was not provided in the record.  The Court asked the parties to brief whether the record was adequate to address the sufficiency of the evidence without the video clips on the CD.  Both parties represent that the contents of the CD are not necessary for a resolution of the appeal.  To the extent that their joint representation constitutes a concession of fact, we accept that concession.  See Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (*en banc*).  To the extent that the representation touches on a legal issue, we accept it as a basis for not deciding that issue on the merits.  See id. at 172 n.4, 622 S.E.2d at 773 n.4 (noting that an appellate court may accept a concession of law if it "qualifies either as a waiver . . . or as an express withdrawal of an appellate challenge," in whole or in part).  Nevertheless, we fully expect this issue to arise in future cases due to the inherent tension between *proprietary* video technology, which is in widespread use, and the requirement of a *public* record that permits the appellate court and the public at large to view such evidence following its admission at trial.

The element in dispute here was proved with circumstantial evidence. It is well established that "circumstantial evidence is competent and is entitled to as much weight as direct evidence[,] provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Brown v. Commonwealth, 54 Va. App. 107, 119, 676 S.E.2d 326, 332 (2009) (alteration in original) (quoting Finney v. Commonwealth, 277 Va. 83, 89, 671 S.E.2d 169, 173 (2009)). However, "[t]he hypotheses of innocence that must be excluded by the Commonwealth are 'those which flow from the evidence itself, and not from the imagination[] of [the appellant].'" Bright v. Commonwealth, 4 Va. App. 248, 252, 356 S.E.2d 443, 445 (1987) (quoting Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983)). Whether a hypothesis of innocence is reasonable is a "question of fact." E.g., Burton v. Commonwealth, 58 Va. App. 274, 285, 708 S.E.2d 444, 450 (2011) (quoting Clanton v. Commonwealth, 53 Va. App. 561, 572, 673 S.E.2d 904, 910 (2009) (*en banc*)). Consequently, when a trier of fact rejects a defendant's argument in support of innocence, such a finding may be set aside on appeal only if it is plainly wrong or without evidence to support it. Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997). In short, "[t]he statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Finally, in relation to a sufficiency challenge, in considering the evidence as a whole, the appellate court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). Instead, the question on appeal is whether, based on the record before the Court, "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Kelly v.

Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (emphasis added) (quoting Jackson, 443 U.S. at 319).

We apply these well-established principles when considering whether the evidence was sufficient to support the trial court's conclusion that the appellant was guilty of the crime of concealment. Code § 18.2-103 provides in pertinent part that a person who "(i) willfully conceals or takes possession of the goods or merchandise of any store" or (ii) "transfers the goods from one container to another" and does so "with the intention of converting [the] goods or merchandise to his own or another's use without having paid the full purchase price thereof" shall be guilty of petit larceny. The statute also expressly provides that "willful concealment" of the item while still on store premises "shall be prima facie evidence of an intent to convert and defraud the owner" of its value. Code § 18.2-103; see Johnson v. Commonwealth, 35 Va. App. 134, 139-40, 543 S.E.2d 605, 608, adopted upon reh'g en banc, 37 Va. App. 187, 555 S.E.2d 419 (2001); Snead v. Commonwealth, 11 Va. App. 643, 646, 400 S.E.2d 806, 807 (1991).

The appellant challenges only the sufficiency of the evidence to prove the actual concealment of the merchandise.[6] He relies on the evidence that the tank bag was never recovered and his statements to the police that he did not steal the bag and could show the officer where he left it in the store. The evidence, however, supports the trial court's finding that the appellant committed the crime of concealment under either of two theories. See Muhammad v. Commonwealth, 269 Va. 451, 486-87, 619 S.E.2d 16, 36 (2005) (holding that the appellant's conviction for capital murder was proper under either of two theories because the evidence supported determinations that he acted as both a principal in the first degree and a principal in the second degree). First, the facts support the conclusion that the appellant committed the crime

---

[6] He does not separately contest whether his actions, if constituting concealment, were willful or whether the evidence proved his prior convictions for larceny.

of concealment by removing the tank bag from its packaging, taking it into the restroom, and failing to return it to its box on the shelf or to the reshop cart before leaving the store and fleeing from Blake. Second, the facts equally support the conclusion, argued by the prosecutor, that the appellant hid the tank bag somewhere on or about his person while in the restroom, fled the store with it, and then disposed of it once out of Officer Shank's sight before being apprehended.

Loss Prevention Officer Blake first noticed the appellant in the automotive section wearing a large backpack. He was displaying odd behavior and looking around. Blake watched from a short distance as the appellant picked up a box from the shelf, looked left and right, and removed a small motorcycle tank bag from the box. He then engaged in clearly furtive behavior by placing the empty box back on the shelf behind another box containing the same product. As Blake continued to watch, the appellant picked up a Walmart backpack, held the smaller tank bag behind it as if attempting to conceal the tank bag, and then walked into the restroom with both pieces of merchandise. When the appellant emerged from the restroom less than two minutes later, the tank bag was no longer visible, supporting the reasonable inference that he either left it in the restroom or concealed it in the personal backpack he was wearing or in the Walmart backpack he was carrying.

Walmart staff then followed the appellant as he walked through the store toward the exit. He placed the Walmart backpack in a cart designated for unwanted items, and he passed all points of sale as he proceeded to leave the store. It was at that time that they confronted him.

When Blake stood directly in front of the appellant and asked him if he would accompany her to the office to "talk about the merchandise that he ha[d] concealed," he "took off" running. The appellant continued to run even though Officer Shank, a uniformed police officer, immediately yelled at him to stop and gave chase. The appellant ran until he lost Shank. Shortly thereafter, other officers found the appellant hiding in a nearby business.

Although the missing tank bag was not found on the appellant's person when he was apprehended, the facts show that he had ample opportunity to discard the bag after he escaped from Officer Shank. Additionally, despite a thorough contemporaneous search by Walmart employees, the tank bag was not found in the restroom or any of the areas of the store that the appellant traversed after leaving the restroom without the tank bag in his hands. Loss Prevention Officer Blake testified that within two to three minutes of the appellant's flight, she and Luna-Caban began to check all of these locations. They searched the men's restroom, the automotive department, and all the aisles that the appellant walked down before heading toward the exit. They also checked the Walmart backpack that the appellant had carried into the restroom and then placed in the cart for unwanted merchandise as well as the cart itself. Finally, Walmart's inventory control system revealed that although the box was recovered the day of the theft, the tank bag was never found inside the store.

Based on the facts that the appellant removed the tank bag from its box in a suspicious manner, carried it into the restroom in his hand, in a fashion demonstrating an effort to obscure it, but emerged with it no longer in view, the record establishes willful concealment. See Code § 18.2-103 (stating that "willful concealment" of an item while still on store premises "shall be prima facie evidence of an intent to convert and defraud the owner"). The appellant's headlong flight from the loss prevention employees and Officer Shank provides additional evidence of his consciousness of guilt. See, e.g., Jones v. Commonwealth, 279 Va. 52, 58, 688 S.E.2d 269, 272 (2010) (recognizing that flight from the scene of a crime may be considered in the context of other facts as evidence tending to show a defendant's consciousness of guilt); see also Harrington v. Richter, 562 U.S. 86, 113 (2011) (in upholding a state criminal conviction on habeas corpus review, noting the defendant's "flight from the crime scene" as part of the "sufficient conventional circumstantial evidence pointing to [his] guilt").

The same facts, along with the appellant's continued effort to evade the authorities after being told that he was suspected of larceny and the failure to find the tank bag in the store after he fled, also support the conviction. These facts provide a reasonable inference that the appellant still had the concealed tank bag in his possession while he was running and that he discarded it after he evaded Officer Shank but before he was located by other officers. Cf. Brown, 54 Va. App. at 110-11, 119-20, 676 S.E.2d at 327-28, 332 (upholding the defendant's conviction for grand larceny where he and two companions were seen picking up bags of frozen seafood in a grocery store, carrying them into the bathroom, emerging without the merchandise in view, and fleeing, after which a search of the bathroom and the adjacent hallway did not yield any of the merchandise and the merchandise was never recovered).

Finally, the appellant's statements and behavior further support a finding of his guilt. The appellant's explanations to Officer Shank were before the trial court and rejected. "Merely because [a] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given . . . [remains] a matter for the [fact finder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). In the end, the appellate court asks only whether a reasonable finder of fact could have rejected the defense theories and found the defendant guilty beyond a reasonable doubt. Hudson, 265 Va. at 513, 578 S.E.2d at 785. The appellant told Officer Shank that he ran because he thought his girlfriend was stalking him. This statement was belied by evidence that Loss Prevention Officer Blake explained to the appellant precisely why she wanted to speak with him when she approached him. Blake, from a distance of two feet away, specifically stated that she believed that he had concealed store merchandise. When she said that she wanted him to accompany her to the office so they could "talk about the merchandise that [he] concealed," the appellant "took off" running. Based on Blake's testimony,

the trial court was entitled to reject the appellant's alternate explanation for his flight and to conclude that he was lying to hide his guilt. See Burton, 58 Va. App. at 286, 708 S.E.2d at 450 (recognizing the deference owed to a trial court's rejection of a defendant's claimed hypothesis of innocence).

The appellant also relies on his claim to Officer Shank that he could show the officer where he had put the item inside the store. However, when Shank said he would not take the appellant back to the store, the appellant refused to tell the officer where the item could be found. In the context of the evidence in this case, the trial court was not required to accept as true the appellant's statement that he did not take the unspecified item merely because Officer Shank refused to allow him to return to the store. This is particularly true in light of the fact that the appellant opted not to take advantage of Officer Shank's offer to have other officers check any location in the store where the appellant claimed the item would be found. In fact, the item was not found inside the store after a thorough search shortly after the appellant fled. Once again, the trial court, as the finder of fact, was entitled to conclude that the appellant was lying and that his statements to Shank did not provide a reasonable hypothesis of innocence. See id.

III. CONCLUSION

The evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's conclusion that the appellant committed the crime of concealment and lied to the police once he was apprehended. The trial court's decision was not plainly wrong or without evidence to support it. Therefore, we affirm the conviction of concealment, third or subsequent offense. However, the amended indictment and conviction and sentencing orders contain clerical errors in that they do not reference Code § 18.2-104, which defines a third or subsequent such larceny offense as a felony rather than a misdemeanor. Additionally, each erroneously includes a citation to Code § 18.2-178, which proscribes an offense that was stricken from the indictment

upon its amendment.  Consequently, we remand to the trial court solely for it to correct these clerical errors by adding references to Code § 18.2-104 and striking the references to Code § 18.2-178.  <u>See</u> Code § 8.01-428(B); <u>Howell v. Commonwealth</u>, 274 Va. 737, 739 & n.*, 742, 652 S.E.2d 107, 108 & n.*, 109 (2007); <u>Tatum v. Commonwealth</u>, 17 Va. App. 585, 592-93, 440 S.E.2d 133, 138 (1994).

<u>Affirmed and remanded.</u>