COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, AtLee and Senior Judge Clements
Argued at Fredericksburg, Virginia


JASON WALKER, S/K/A
 JASON KEITH WALKER

 MEMORANDUM OPINION* BY
v. Record No. 0676-21-4 JUDGE JEAN HARRISON CLEMENTS
 MAY 3, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Joseph J. Collins, III, Assistant Public Defender, for appellant.

Susan Brock Wosk, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Jason Walker appeals a May 17, 2019 order convicting him of petit larceny, third or

subsequent offense, and sentencing him to three years' incarceration. On appeal, appellant argues

that the trial court erred by admitting a "training receipt" that listed items he was alleged to have

taken. He also argues the evidence did not prove that he committed a taking or exclude the

possibility that a woman who was with him was the perpetrator. For the following reasons, we

affirm appellant's conviction.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Gerald v. Commonwealth*,

295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381 (2016)). In doing so,

we discard any of appellant's conflicting evidence, and regard as true all credible evidence

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Id.* at 473.

Appellant purchased two items at a Target store at 10:49 a.m. on June 18, 2016. After leaving the store, he returned inside, pushing a shopping cart with Target shopping bags in it. Target asset protection employee Bryant Raabe saw the "Target bags" in appellant's cart and watched him put an electric razor in the cart. Accordingly, Raabe began watching appellant using the store's cameras at 11:14 a.m.

In the men's section of the store, appellant put several clothing items in his cart, including a green t-shirt and another shirt, hanging them on the cart's handle before moving them into the main compartment. Initially, appellant's cart had bags and merchandise in the upper, or main, compartment, but appellant later moved bags from that compartment to the shelf underneath the cart. In the grocery area, appellant took a double-bagged Target bag from the upper compartment and removed the outer bag. He put the empty bag back in the upper compartment, then knelt and put the inner bag, loaded with merchandise, onto the cart's bottom shelf. While cradling his phone against his left shoulder, appellant took an item from the upper compartment of his cart, knelt and handled the bags he had just moved to the lower shelf; when appellant stood, the item no longer was in his hand.

Appellant manipulated other items in the cart, placed some in a bag, then moved the bag to the bottom shelf. He left the grocery area with the bottom shelf loaded with bags, while the upper compartment had just a few items; the shirts, which had been clearly visible in the upper compartment before, were no longer visible in that compartment or the bottom shelf. Appellant then walked to the self-checkout lanes.

Near the self-checkout lanes, appellant briefly talked to a woman in a checked shirt, who showed him some clothing items but did not hand anything to appellant or place anything in his

cart. Appellant then went into a self-checkout lane and bought milk and a shirt. While at the checkout register, appellant took all the bags from underneath his cart and put them in the cart's main compartment before leaving the checkout lane. The woman went to the same register appellant had used and purchased items while appellant waited a few feet away. Although appellant stepped a few feet away from his cart, leaving it unattended, nobody put anything into his cart until he returned carrying several bags that he retrieved from the woman. When he returned to his cart, appellant lifted the bags out of his cart then walked out of the store, followed by the woman.

Raabe and another employee followed appellant and escorted him back inside to an office where they cross-checked the goods appellant had taken out of the store against the receipts from his purchases; they also identified the items the woman bought and returned them to her. After identifying the items in appellant's possession that had not been paid for, Raabe used a scanner in "training mode" to print a "training receipt" that listed those items along with their value after any discounts.

After about nineteen minutes in the office, appellant stood from the chair he had been sitting in and left the room. Three Target employees escorted him back into the office, but he resisted their attempts to place him in a chair and handcuff him. After struggling for four minutes, the employees handcuffed appellant to the chair and Fairfax County police officers arrived.

At trial, Raabe testified appellant did not pay for "a Norelco razor, Rogaine hair treatment, Arm & Hammer," "a men's fragrance," "a number of tee-shirts and clothing items," and "a sheet set." The razor was "concealed within Target bags." Raabe saw appellant "put the sheet set in the Target bag" and "the merchandise that was inside the shopping cart go into the Target bag." Raabe also testified that it was not possible that the woman in the checked shirt had paid for some

of the stolen items because they were together only during the brief interaction just before the checkout lanes.

Once Raabe identified the items for which appellant had not paid, he generated a "training receipt" so as not to "affect store sales." Raabe explained that he generated training receipts "in the normal course of business." He admitted that the receipt "reflect[ed] what the Target system" said, rather than what he knew. Appellant objected to admission of the receipt as hearsay. The court overruled the objection and admitted the receipt as a business record.

At the close of the Commonwealth's case-in-chief, appellant moved to strike the evidence, arguing that the Commonwealth had not proved that appellant was the person who took the items because Raabe "didn't actually see [appellant] take anything" and had testified that appellant was "with another person in the store." After argument by counsel, the trial court denied the motion to strike. As noted above, the jury convicted appellant of petit larceny, third or subsequent offense.[1] The court then sentenced appellant to three years' incarceration in accordance with the jury's verdict and sentence recommendation.

STANDARD OF REVIEW

"The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." *Warnick v. Commonwealth*, 72 Va. App. 251, 263 (2020) (quoting *Amonett v. Commonwealth*, 70 Va. App. 1, 9 (2019)). A trial court "by definition abuses its discretion when it makes an error of law," and we review the court's decision to ensure "that the discretion was not guided by erroneous legal conclusions." *Coffman v. Commonwealth*, 67 Va. App. 163, 166-67 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)). We will not, however, reverse a trial

---

[1] The court had instructed the jury that the element of two or more prior convictions was proven because the Commonwealth and appellant stipulated that appellant had been convicted twice for larceny.

judge's ruling simply because we disagree. *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019). A reviewing court can conclude that "an abuse of discretion has occurred" only in cases in which "reasonable jurists could not differ" about the correct result. *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

ANALYSIS

A. Admissibility of the training receipt

Appellant argues the "training receipt" was inadmissible hearsay because it contained information that came from Target's system rather than Raabe's personal knowledge and did not meet the criteria for the business record exception to the rule against hearsay. Appellant further argues that its admission was not harmless because "there was no other evidence about what, specifically, was stolen" and both the Commonwealth and appellant's counsel referred to the receipt in the jury's presence.

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *Atkins v. Commonwealth*, 68 Va. App. 1, 7 (2017) (quoting Va. R. Evid. 2:801(c)). Hearsay evidence "'is inadmissible unless it falls within one of the recognized exceptions' to the rule against hearsay." *Id.* at 7-8 (quoting *Robinson v. Commonwealth*, 258 Va. 3, 6 (1999)). One such exception is the business records exception, which excludes from the rule against hearsay a "record of acts, events, calculations, or conditions if" certain requirements are met. Va. R. Evid. 2:803(6).

We need not decide whether the training receipt was a business record because the record demonstrates that it was admissible under this Court's opinion in *Twine v. Commonwealth*, 48 Va. App. 224 (2006).[2] In *Twine*, we held that "the price tag exception to the hearsay rule in shoplifting cases . . . permits the admission into evidence of a cash register receipt generated by scanning the bar codes on the stolen items of merchandise." 48 Va. App. at 234; *see also Robinson*, 258 Va. at 10 (establishing the "price tag exception" to the rule against hearsay). We reasoned that the inherent unreliability of hearsay was not present because "the bar code imprinted on or attached to the item is scanned at a cash register," which reads the bar code and "access[es] the electronic data associated with that bar code" and "displays its name and purchase price." *Twine*, 48 Va. App. at 233.

Similarly, in this case, the evidence established that Raabe generated the receipt by scanning the bar codes of the items for which appellant had not paid. Although appellant attempts to distinguish *Twine* by highlighting that Raabe set the cash register to "training mode" and thereby created a "training receipt," that is a distinction without significance. Raabe explained that the

---

[2] "Under the right-result-different-reason principle, an appellate court 'do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground.'" *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)).

training receipts accessed the same information in the "Target system" as a normal receipt, with the only distinction being that they do not affect the records of the store's sales. Thus, the trial court did not abuse its discretion by admitting the training receipt because it was admissible under *Twine*.

### B. Sufficiency of the evidence

First, appellant argues that he did not commit a taking by removing the items from the store shelves or shifting items in his cart. Second, he argues that the evidence did not exclude the "reasonable hypothesis of innocence" that the woman "committed the taking at the self-checkout by placing the items in Mr. Walker's bags without his knowledge." Appellant argues that "there is neither eyewitness testimony nor video evidence" of him "concealing or not scanning items at self-checkout." Further, he argues, the woman's movements were "largely unaccounted for," Target employees did not "watch[] or surveil[] her as she moved throughout the store," and there was no evidence of her actions at the self-checkout.

Larceny is a common law crime involving "the wrongful or fraudulent taking of personal goods of some intrinsic value, belonging to another, without his assent, and with the intention to deprive the owner thereof permanently." *Creamer v. Commonwealth*, 64 Va. App. 185, 205 (2015) (quoting *Carter v. Commonwealth*, 280 Va. 100, 104-05 (2010)). "Stated simply, larceny requires that there be a taking and asportation of the seized goods, coupled with an intent to steal those goods." *Carter*, 280 Va. at 105 (citing *Britt v. Commonwealth*, 276 Va. 569, 575 (2008)). "A trespassory taking is a taking or removal of possession of property from the owner with felonious intent." *Id.* at 106 (citing *Richards v. Commonwealth*, 54 Va. (13 Gratt.) 803, 806 (1856)). "A violation of the owner's possessory right constitutes a trespassory taking." *Otey v. Commonwealth*, 71 Va. App. 792, 799 (2020) (citing *Overstreet v. Commonwealth*, 17 Va. App. 234, 236 (1993)).

> Because every customer in a self-service store has implied
> permission to move merchandise, placed on open display,
> unconcealed about the premises of the store, the trespassory taking
> and carrying away of the merchandise of another does not usually
> occur at such a store when the property is moved on the premises.

*Carter*, 280 Va. at 106. "If, however, there is some conduct by the customer which makes the customer's possession clearly *adverse* to the store, there is a trespassory taking." *Id.* (emphasis added) (citing *Freeman v. Meijer, Inc.*, 291 N.W.2d 87, 89 (Mich. App. 1980)). "A trespassory taking is most easily proven by a defendant leaving the store without paying for merchandise." *Id.* A defendant, however, "may be said to have taken another's property by trespass though he has not removed it from the other's premises or from his presence." *Id.* (quoting Wayne R. LaFave, *Criminal Law*, § 19.2(i), at 979 (5th ed. 2010)).

Here, the evidence demonstrated that appellant concealed multiple items in Target bags, paid for two other items, and walked out of the store without paying for the rest of the goods. While in the grocery department, appellant took an item from the upper compartment of his cart, handled bags he had just moved from that compartment to the lower shelf, and then stood with the item no longer in his hand, allowing an inference that he had concealed it in the bags. Likewise, shirts that had been clearly visible in appellant's cart before he entered the grocery department were no longer visible after appellant placed various items into a bag and moved the bag to the bottom shelf, indicating that he hid the shirts in the bags. Appellant committed a trespassory taking when he hid those items. *See* Code § 18.2-103 ("The willful concealment of goods or merchandise of any store . . . while still on the premises thereof, shall be *prima facie* evidence of an intent to convert and defraud the owner thereof out of the value of the goods or merchandise."); *see also Carter*, 280 Va. at 106 (stating that a trespassory taking occurs when "there is some conduct by the customer which makes the customer's possession clearly *adverse* to the store" (emphasis added)).

Furthermore, although Raabe did not see appellant hide every item, his testimony and the videos demonstrated that appellant placed numerous items into his cart as he moved throughout the store but paid for only two items before leaving the store with the rest in bags. When appellant left the store without paying for the merchandise itemized on the training receipt, he committed a trespassory taking. *Carter*, 280 Va. at 106; *Otey*, 71 Va. App. at 799.

Moreover, appellant's behavior after being detained by Target employees provides further evidence of guilt. Appellant attempted to flee from the Target office where Raabe and others had taken him to wait for police, and when they escorted him back in, he resisted their efforts to keep him there. Appellant stopped trying to escape only when, after four minutes, the employees succeeded in handcuffing him to a chair and police officers arrived. *See Hope v. Commonwealth*, 10 Va. App. 381, 386 (1990) (*en banc*) ("[E]vidence of flight may be considered as evidence of guilt along with other pertinent facts and circumstances."); *see also Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) (stating the fact finder may consider the "conduct of an accused after the events that constitute the charged crime").

Finally, the record demonstrated that appellant and the woman were together for no more than a few moments and that she did not do anything to appellant's cart or its contents. Indeed, the videos of appellant checking out demonstrated that no one other than appellant handled the bags in his cart or put anything into it. "The Commonwealth need exclude only reasonable hypotheses of innocence that 'flow from the evidence itself, and not from the imagination' of the defendant." *Kelley v. Commonwealth*, 69 Va. App. 617, 629 (2019) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). Thus, the Commonwealth's evidence was competent, not inherently incredible, and sufficient to prove that appellant took the items.

CONCLUSION

For the foregoing reasons, appellant's conviction is affirmed.

*Affirmed.*